IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SOUTHERN PAINTERS | ) | |
| WELFARE FUND; and TRUSTEES | ) | |
| OF THE SOUTHERN PAINTERS | ) | |
| WELFARE FUND, DARRYL TRAYLOR | ) | |
| and WALTER J. ILCZYSZYN | ) | CIVIL ACTION NO. 2:22-cv-1563 |
| | ) | |
| vs. | ) | |
| | ) | |
| GARDEN STATE LIFE INSURANCE | ) | |
| COMPANY and KISMET RISK | ) | |
| MANAGEMENT ASSOCIATES, LLC | ) | |

## COMPLAINT

NOW INTO COURT, through undersigned counsel, come Plaintiffs, Southern Painters

Welfare Fund and Trustees of the Southern Painters Welfare Fund, Darryl Traylor and Walter J.

Ilczyszyn (collectively, the "Fund"), who bring this complaint against Defendants, Garden State

Life Insurance Company ("Garden State") and Kismet Risk Management Associates, LLC

("Kismet") (collectively, the "Defendants"), and allege as follows:

## PARTIES AND NATURE OF THE COMPLAINT

1.      At all times relevant hereto, the Fund is an employee welfare benefit plan within

the meaning of § 3(1) of the Employee Retirement Income Security Act of 1974, as amended

("ERISA"), 29 U.S.C. § 1002(1), and a multiemployer plan within the meaning of § 3(37)(A) of

ERISA, 29 U.S.C. § 1002(37)(A). The Fund is established and maintained as a trust as mandated

by § 302(c)(5) of the Labor-Management Relations Act, 29 U.S.C. § 186(c)(5), and is funded by

contributions from employers party to collective bargaining agreements with labor organizations

"for the purpose of paying, either from principal or income or both, for the benefit of employees,

their families and dependents, for Medicaid or hospital care . . ."

2.      The Fund is established, organized, and operated as a Louisiana trust whose situs is at 2400 Crestview Avenue, Kenner, Louisiana 70062. At all material times it has been governed by a written trust agreement, entitled Restated Agreement and Declaration of Trust, Effective December 31, 2016.

3.      The Fund is maintained for the purpose of providing its participants and beneficiaries, through the purchase of insurance or otherwise, medical, surgical, or hospital care or benefits or benefits in event of sickness, accident, or disability, as defined in § 3(1) of ERISA, 29 U.S.C. § 1002(1).

4.      Section 403 of ERISA requires the assets of an employee benefit plan to be held in trust. (29 U.S.C. § 1103(a)).

5.      The Southern Painters Health and Welfare Fund's Board of Trustees, including named Plaintiff Trustees, Darryl Traylor, and Walter J. Ilczyszyn (collectively "Trustees"), are fiduciaries within the meaning of § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and have standing to sue on behalf of the Fund, their fellow Trustees, and Fund participants.

6.      At all times relevant hereto, the Trustees, in their capacity as fiduciaries, are duly authorized to conduct the business of the Fund, including the legal authority to bring this action, and have been authorized by the Board to prosecute this action on behalf of the Fund.

7.      The Trustees, as fiduciaries, have authority and discretion over the management and control of Fund assets. (§ 403(a), (b) of ERISA, 29 U.S.C. § 1103(a), (b)).

8.      The Trustees, under the terms of the Plan, have authority to purchase insurance contracts if and as deemed necessary or desirable to provide for benefits. The Plan is appended to this Complaint as Exhibit "A" and made a part hereof.

9.      At all times relevant hereto, the Fund maintains a place of business at 5 Hot Metal Street, Suite 200, Pittsburgh, Pennsylvania 15203, which houses the third-party administrator contracted by the Trustees, CDS Administrators, Inc.

10.      The Fund is authorized to sue in its own name by § 502(d)(1) of ERISA, 29 U.S.C. § 1132(d)(1).

11.      At all times relevant hereto, Defendant Garden State is a privately held insurance company and maintains a principal place of business located at 2450 South Shore Boulevard, Suite 401, League City, Texas 77573. Garden State is qualified to conduct business and conducts business in Pennsylvania.

12.      At all times relevant hereto, Defendant Kismet is a limited liability company that maintains a principal place of business located at 229 Brookwood Drive, Suite 14, South Lyon, Michigan 48178 and an "administrative office" at 6505 East 82nd Street, Suite 206, Indianapolis, IN 46250.

13.      Defendants entered into a "Treaty of Excess Loss Reinsurance" (hereinafter the "Contract" or "Policy") with the Fund for the Contract period of January 1, 2020 to January 1, 2021. By and through the Contract, Defendants agreed to provide certain excess loss insurance to the Fund. The Contract or Policy is appended to this Complaint as Exhibit "B" and made a part hereof.

14.      (a) Kismet and Garden State, by amendment to the Contract entitled "SPECIFIC INSURANCE IMMEDIATE REIMBURSEMENT AMENDMENT," effective January 1, 2020, expressly acknowledged that "even with proper funding and prudent plan administration, large individual plan losses create cash flow stress to the (Fund)."

(b)  Kismet, serving as the "managing general underwriter" for the Contract issued by Garden State to the Fund, agreed, *inter alia*, to administer the Contract, in conjunction with Garden State as "insurer," in an expedited manner with respect to claims review and reimbursement procedures.

15.     The Fund has been subjected to liability for medical expenses incurred in the administration of its self-funded welfare plan of benefits. This liability is covered by the Contract issued to the Fund by Garden State and Kismet.

16.     The Contract was at all times material to this action a "plan asset" of the Fund, having been purchased by the Fund, and accordingly subject to regulation under ERISA.

## JURISDICTION AND VENUE

17.     (a)  This Court has original and exclusive jurisdiction over the claim in Count I of this Complaint pursuant to 29 U.S.C. § 1132(a)(3) because this matter arises under § 404 *et seq*. of the Employee Retirement Income Security Act of 1974, as amended (ERISA), 29 U.S.C. § 1104, *et seq*. Further, this court has original jurisdiction over Counts I, II, and III pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and is between citizens of different states.

(b)  This Court has supplemental jurisdiction over Counts II and III of this Complaint pursuant to 28 U.S.C. §1367, because said Counts are so related to the claims in this action within such original jurisdiction that they form part of the same case or controversy.

18.     Venue is conferred on this Court by 29 U.S.C. § 1132(e)(2) as where the breach took place and because the Fund administers a plan of benefits through a third-party administrator and a health plan claims administrator, both located in and doing business in Pittsburgh, Pennsylvania, within the Western District of Pennsylvania.

## RELEVANT FACTUAL BACKGROUND

19.     The Fund, which is a multiemployer welfare plan established and maintained under ERISA and the Labor-Management Relations Act, 29 U.S.C. § 186(c) (LMRA), provides health insurance benefits to employees of participating employers. The Fund is "self-funded," making it responsible for the costs of health care incurred by its participants.

20.     The Fund's governing Trustees determined that the Fund should not assume the risk of very large medical claims that may be submitted for coverage as the vagaries of a large claim may risk the Fund's ability to provide benefits to participants and beneficiaries. Therefore, the Fund procured excess (or "stop loss") insurance through Garden State for the purpose of insuring against excess losses by the Fund in the event of a large medical expense claim(s).

21.     Garden State accepted the Fund's application for coverage and issued "Treaty Number GSLIC-KRMA-3093-1" (hereinafter the "Contract") to the Fund. Under the Contract, Defendants agreed to provide stop loss coverage for the period January 1, 2020 through January 1, 2021 (the "Policy Period").

22.     Under the Contract purchased by the Fund, Defendants became unconditionally responsible to reimburse the Fund for the value of a claim or claims for benefits under the plan in excess of specified monetary thresholds. Specifically, the Contract is for a specific excess loss level of $400,000 per Covered Person, with an Aggregating Specific Deductible of $362,500.

23.     Under this arrangement, Kismet acted on its own behalf, and on behalf of and as agent for Garden State. Kismet was responsible for processing stop loss claims. However, Kismet was not authorized to make coverage determinations under the plan.

24.     As part of their underwriting process, Kismet and Garden State, pursuant to Section 2(M) of the Contract, reviewed the Fund's "self-funded benefit plan," "approved" same, and in turn expressly made the plan "a part of this Treaty."

25.     Section 5(B) of the Contract obligated the Fund to maintain and administer the self-funded benefit plan "in accordance with that which is in effect at the Inception Date of the Treaty," subject to change but only with advance consent of Garden State.

26.     Sections 2(E) and (F) of the Contract essentially adopted the Fund's plan by clearly and unambiguously recognizing Defendants' obligation to reimburse excess claims under the Contract with respect to any expenses that are "covered under the terms of Your Plan" and incurred by a plan participant who meets the plan's eligibility requirements.

27.     At all times material to this action, the Fund retained the services of Highmark Blue Cross Blue Shield ("Highmark"), a third-party claims administrator. In addition to other duties, Highmark was and is today responsible for processing claims under the plan of benefits, which was and continues to be a "part of" the Contract.

28.     Highmark's services to the Fund included the administration of an "exclusive provider organization," styled as "EPO Blue," which provided a network of physicians, hospitals and medical providers for eligible Fund and plan participants.

29.     Highmark was further recognized and made an integral, necessary part of the Contract negotiated by Kismet for Garden State by operation of Section 2(D) of the Contract:

> *CLAIMS ADMINISTRATOR means the individual or entity named in the Schedule of Excess Loss Reinsurance to perform claim processing under Your Plan on Your behalf and which has been approved to do so by the Reinsurer.*

(Exhibit B, p. 8. Emphasis added)

30.     Section 5(E) of the Contract, entitled "Claims Administration," further clarified Highmark's duties, responsibilities, and authority under the Contract, all integrated with the fiduciary functions mandated for Garden State and Kismet:

> *While this Treaty is in force, You [the Fund] shall employ, at Your own expense, the services of the Claims Administrator stated in the Schedule. The Claims Administrator will be Your agent, and will not be considered an agent of the Reinsurer. The services of the Claims Administrator cannot be terminated without the advance written consent of the Reinsurer. Such consent shall only be granted in the event that the Claims Administrator is to be replaced by another acceptable to the Reinsurer.*

(Exhibit B, p. 13. Emphasis added)

31.     Section C of the Application for Excess Loss Reinsurance, appended to this Complaint as Exhibit "C" and made a part hereof, indicates that members are to be covered both collectively and individually, providing:

> *[T]his Treaty covers employees who are Actively at Work and dependents who are not hospital confined. This Treaty is not intended to cover persons who cannot meet a "normal life activity" requirement whether a covered employee/dependent, retired employee or COBRA beneficiary.  …*

(Exhibit C, p. 3 of 4. Emphasis added)

32.     During the policy period, Highmark paid medical expenses for four (4) covered and eligible Fund participants and beneficiaries, each claim meeting the definition of a "PAID CLAIM" under Contract Section 2(L); was indisputably covered and payable under the plan established and maintained by the Fund and its Trustees; "fully adjudicated and approved" by Highmark as required under the Contract; and, critically, met the $400,000 threshold activating the specific excess loss level for reimbursement. (Exhibit B, p. 9)

33.     Garden State, acting through Kismet, has only partially reimbursed the Fund pursuant to the terms of the Contract for these four participants' and beneficiaries' claims, which

were all timely adjudicated and approved by Highmark and fully compliant with the Fund's plan and the Contract.

34.   In the matter of multiple medical claims paid on behalf of Fund Participant "MA," Kismet issued partial payment of $67,662.15, as "reimbursement amount," which was based on its determination of "allowable" charges of only $467,662.15 less the application of the "specific retention amount" of $400,000. The total paid charges were actually $863,777.42, all properly adjudicated by Highmark. In January 2022, Kismet unilaterally and arbitrarily determined that $396,115.27 of the paid charges were then and continue to be "denied." The Fund is due an additional $396,115.27 in reimbursements related to Fund Participant "MA."

35.   In the matter of claims paid on behalf of Fund Participant "CB," Kismet issued partial payment of $385,195.29 to the Fund. The total paid charges were $1,282,345.28, all properly adjudicated by Highmark. An additional $370,621.06 is due the Fund relative to drug and infusion charges incurred by Participant CB and duly adjudicated and approved by Highmark, as well as the following other charges denied by Kismet for reasons not supported by the Contract or the plan.

36.   In the matter of claims paid on behalf of Fund Participant "RR," Kismet issued partial payment of $138,763.73 as "reimbursement amount," which was based on its determination of "allowable" charges of only $538,763.73 less the application of the "specific retention amount" of $400,000. The total paid charges were actually $795,658.36, all properly adjudicated by Highmark. An additional $256,894.63 is due to the Fund. Such amount was wrongfully deemed "denied" by Kismet as having not been supported by certain information requested from Highmark.

37.     In the matter of claims paid on behalf of Fund Participant "OM," Kismet issued partial payment of $433,738.64. The total charges, properly adjudicated and paid by Highmark, were $1,639,941.28. Kismet unilaterally and arbitrarily determined that $897,048.78 of hospitalization charges included within the total paid were "adjusted" by $463,780.14 as "a deduction (for) claims requested, but not received." The Fund is due an additional $570,231.57 in reimbursements related to Fund Participant "OM."

38.     The reimbursement process as to all claims, as administered by Kismet, began in February 2021 and concluded in March 2022.

39.     The Fund and Highmark fully cooperated with Kismet in verifying payments made to providers on behalf of the four participants and beneficiaries whose claims exceeded the specific retention amount of $400,000.

40.     Indeed, Highmark has provided intensely detailed and specific data related to the nature of services rendered, hospitalization, diagnoses, and "coding descriptions."

41.     In all, 300 "rows of data" have been timely provided to Kismet as to each and every claim incurred by Participants MA, CB, RR, and OM. The data points included:

| | | |
|---|---|---|
| ETG Description | Line Blind Key | Member First Name |
| First Date of Service | Claim Date Paid | Member Name |
| Last Date of Service | Deter Code | Member Date of Birth |
| Record Type Description | Event Identifier | Member Age |
| Claim ID | Benefit Category | Member Gender |
| Claim No. | First Service Date | Member Relationship |
| Claim Line No. | Last Service Date | Contract Type |
| Finalization Date | Incurred Date | Currently Enrolled |
| Claim Type | Incurred Month | Indicator |
| Type of Bill | Paid Date | Member City |
| Type of Bill Description | Paid Month | Member State |
| Place of Service | IP Incurred Date | Member County |
| Place of Service | Invoice Date | Member Status |
| Description | Subscriber ID | Medicare Eligibility |
| Network Indicator | Member Key | Indicator |
| Revenue Code | Member ID | Encrypted Subscriber ID |

Encrypted Member ID
ALT Member ID
Member MSA
Member Zip Code
WHS UNQ MBR ID
Account ID
Account Name
Product
Line of Business
Group ID
Group Name
Funding Type
Product Line
Market Segment
Invoice Number
Deductible
Copayment
Coinsurance
Out of Pocket
COB
COB Medicare
Paid
Access Fee
Administrative Expense
Allowance
Service ID
Service Date
Service Day of Week
Service Category Group
Service Category
Event Service Type
Event Service Type Detail
Line Service Type Detail
Line Service Type
Units
Revenue Description

CCS CPT Procedure
Group
CPT/HCPCS Procedure
CPT/HCPCS Description
CPT Modifier Code
ICD Version
Dx1
Dx 1 Description
3-Digit Principal Diagnosis
Code
3-Digit Principal Diagnosis
Description
Dx2
Dx3
Dx4
Billing Provider ID
Billing Provider Tax ID
Billing Provider NPI
Billing Provider Name
Billing Provider Type
Billing Provider Address
Billing Provider City
Billing Provider State
Billing Provider Zip Code
Billing Provider County
Billing Provider Specialty
Servicing Provider ID
Servicing Provider NP1
Servicing Provider Name
Servicing Provider
Specialty
Provider Network ID
Servicing Provider City
Servicing Provider County
Servicing Provider State

Servicing Provider Zip
Code
Servicing Provider
Network
Servicing Provider
Network Category
Servicing Provider Group
Name
Servicing Provider Group
Tax ID Name
Attributed Provider ID
Attributed Provider NPI
Attributed Provider TIN
Attributed Provider Name
Attributed Provider
Specialty
Billing Provider County
Code
Billing Provider
Micromarket
Billing Provider MSA
Servicing Provider County
Code
Servicing Provider
Micromarket
Servicing Provider MSA
Provider Specialty
Provider Specialty
Description
NDC
Specialty Drug Flag
Specialty Drug
Therapeutic Class
Specialty Drug HCPCS
Code

42.     Section 5(I), Loss Provisions, of the Contract provides:

*In the event of any reimbursement being claimed under this Treaty, accounting records and other written proof of the basis upon which reimbursement is claimed must be furnished to the Reinsurer, in a form acceptable to the Reinsurer, within 90 days.*

*The Reinsurer will reimburse You as soon as reasonably possible after adequate proof of loss is received, except that there shall be no payment under the*

> *Aggregate Excess Loss provision until after the Expiration Date of the Treaty Period, and audits satisfactory to the Reinsurer are completed.*

(Exhibit B, p. 14. Emphasis added)

43.     The extensive data timely provided to Kismet was beyond "adequate" in proving the loss or losses suffered by the insured Fund.

44.     Kismet, however, inexplicably and arbitrarily maintains that the Fund and Highmark are responsible for obtaining from various providers who treated or supplied medicines to, or otherwise provided medical care and services to the four Participants, "itemized billing" data and information and delivery of same to Kismet.

45.     Highmark, in conjunction with the Fund and its consultants and counsel, have sought the relevant itemized billing information, but have been unable to obtain such data from all providers, despite repeated efforts and demands.

46.     Defendants can show no cause or rationalization for denying full payment on the proven losses.

47.     Section 3, EXCLUSIONS AND LIMITATIONS OF LIABILITY, of the Contract at subsection (A) provides:

> *The Reinsurer's liability under this Treaty is limited to reimbursement of claims amounts properly paid to, or on behalf of, Covered Persons under Your Plan, and for those Covered Benefits stated in the Schedule.*

(Exhibit B, p. 10. Emphasis added)

48.     Section 3(B) of the Contract provides:

> *The Reinsurer will not be liable for claims amounts paid which are not covered under the terms and provisions of Your Plan Document.*

(Exhibit B, p. 10. Emphasis added)

11

49.     The Defendants have not and cannot now contend, argue, or even suggest that any claims amount was not "properly paid to, or on behalf of, Covered Persons under Your Plan"  for "those Covered Benefits stated in the Schedule."

50.     Moreover, Defendants have not and cannot now resist full and complete liability for the claims in question or make any argument or suggestion, express or implied, that the "claims amounts paid" were "not covered under the terms and provisions" of the Fund's plan documents.

51.     No exclusions or limitations apply for Defendants to deny payment in full. (Exhibit B, pp. 10-11).

52.     No defense or justification for failure or refusal to make complete reimbursement as to each of the four participant claims, based on any such exclusions or limitations, have been asserted by either Defendant.

53.     The Fund timely paid in full all premiums to Kismet as required under the Contract. These monthly premiums represent a total of $396,144.80 that was paid by the Fund to Kismet over the Contract period.

54.     The Fund timely sought administrative review of Kismet's claims adjudication by "appealing" these claim denials directly to Garden State Life Insurance Company.

55.     On March 30, 2022, Garden State, through counsel, agreed to "continue discussions about possible resolution or settlement of these denied claims."

56.     On September 14, 2022, Garden State, through counsel, acknowledged receipt of data from the Fund and Highmark, but advised the Fund that "(g)iven the information currently provided, the denial of these claims for failure to provide information to support proof of loss by Garden State was warranted."

57.     On October 17, 2022, following attempts to convene all interested parties (the Fund, CDS Administrators, Highmark, Kismet, and Garden State), counsel for the Fund and Garden State agreed that any further efforts to convene all such parties by in-person or remote methods would be futile and unproductive.

58.     The Fund and its Trustees have fully exhausted any and all administrative remedies available to them under the contract and the Plan.

## COUNT I

### Breach of Fiduciary Duty Under ERISA or
### Engaging in Acts or Practices Violative of the Fund's Plan of Benefits

59.     Plaintiffs hereby incorporate the allegations contained in paragraphs 1 through 58 of this Complaint as if set forth in full.

60.     The Fund contracted with Defendants for excess insurance and related plan services in order to gain protection, peace of mind, and defense against improbable and calamitous losses, all facts known to Defendants. Therefore, a special relationship existed between the Fund and the Defendants, and the Fund had a reasonable expectation, if not a right, to expect integrity and fidelity.

61.     The Fund, which pays benefits to covered employees from the contributions it receives from participating employers, is the named insured under the Contract, making the Contract a plan asset within the meaning of ERISA.  Among other things, Defendants are fiduciaries as a result of their exercise of authority and control respecting the management and disposition of this plan asset (i.e., the Contract).

62.     The Contract expressly adopted the Fund's plan of benefits with respect to critical terms and conditions relating to participants and dependent coverages and eligibility and covered medical expenses.

63.     The Defendants accepted and expressly approved Highmark as Claims Administrator, and also recognized in Section 2(E) of the Contract its obligation to "reimburse" expenses incurred by a "Covered Person" as covered under the terms of the Fund's plan and as defined in Section 2(F) of the Contract. The four Participants, MA, CB, RR, and OM, were each an eligible, covered participant or dependent under the Fund's plan and a Covered Person under the Contract.

64.     Because the Defendants both held themselves out as trusted partners and assumed discretionary authority or control for interpreting plan provisions, terms, and conditions, the Defendants exercised disposition and administration over Fund assets, assuming the role of fiduciary under common law, and the common law of ERISA, with respect to the Fund.

65.     Because the Defendants assumed discretion with respect to the interpretation of plan and related Fund documents, which govern the administration of the Fund and the use of Fund assets, the Defendants are "fiduciaries" within the meaning of § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and the common law of ERISA.

66.     The Fund's decision to pay claims incurred by the four Participants, which were properly adjudicated by Highmark, was reasonable and necessary under the terms and conditions of the Fund's controlling plan documents, as well as the Contract, which incorporated the Fund's plan as a binding term and condition and related obligations, and, indeed, required the Fund to engage for such plan administration responsibility for the term of the Contract.

67.     While there is no formal presentation of written reasons for partially denying or downwardly "adjusting" the fully adjudicated claims, the Fund and Highmark have been informed by Kismet that the denied portions of each claim were based on Kismet's request to receive itemized billings ("IB's") from the various providers billing the claims in question.

14

68.     In denying the claim on the above grounds, Kismet interpreted the language of the plan as to what is adequate proof of loss.

69.     By interpreting the plan, Kismet exercised discretionary control over the plan and the assets of the Fund and as such acted as a fiduciary under ERISA.

70.     By denying the Fund's claims for full reimbursement under the Contract for the four Participant claims, Defendants have usurped the Fund Trustees' fiduciary decision that each Participant was eligible for benefits and Highmark's adjudication of each claim.

71.     Defendants breached their fiduciary duty to the Fund and its participants and beneficiaries by denying these claims without proper cause or justification, as has been and continues to be mandated under the Fund's plan document and ERISA.

72.     Defendants also breached their fiduciary duty by misinterpreting not only the provisions of Fund documents and the operations of the Fund, but also the provisions of the Contract in an attempt to evade responsibility for paying the four Participant claims in full.

73.     The foregoing actions represent a breach of fiduciary duty, both at common law and under § 404 of ERISA, 29 U.S.C. § 1104.

74.     Moreover, the Defendants, whether functioning as plan fiduciaries or as providers or vendors engaged by the Fund, did engage and continue to engage in acts or practices which violate the terms of the Fund's plan.

75.     Such non-fiduciary, but plan-related activities are redressable by the Plaintiffs, as fiduciaries, under § 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3), to seek "to enjoin any act or practice which violates . . . the terms of the plan, or . . . to obtain other appropriate equitable relief . . . to enforce . . . the terms of the plan."

76.     Under § 405(a) of ERISA, the Defendants are jointly and severally liable for the breach of fiduciary duty by their co-fiduciaries. (29 U.S.C. § 1105(a)).

77.     As a result of Defendants' breach of their co-fiduciary duties and/or obligations to not act or engage in practices which violate the terms of the ERISA-maintained welfare plan, Plaintiffs have suffered harm as set forth above.

**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court:

a.     Enter judgment against Defendants, jointly and severally, for the amount of the Claim with post-judgment interest;

b.     Enter judgment against Defendants for declaratory, injunctive, and other appropriate equitable relief to be determined at trial, with post-judgment interest;

c.     Award reasonable attorneys' fees, interest, and costs incurred in connection with this litigation; and

d.     Award such other relief as the Court deems just and proper.

## COUNT II

### Breach of Contract

77.     Plaintiffs hereby incorporate the allegations contained in paragraphs 1 through 76 of this Complaint as if set forth in full.

78.     The Fund, in conjunction with its authorized agent Highmark, has performed all of its obligations under the Contract, including paying all premiums when due and administering benefits under the Fund's plan of benefits and the Contract, which adopted the plan.

79.     The Contract does not alter the Trustees' complete discretion to determine what represents a reasonable and necessary claim(s) and to make decisions regarding eligibility for benefits as the Fund did concerning the benefit claims.

80.     The Policy did not grant Defendants discretion to decline to reimburse the Fund for reasonable and necessary payments made on behalf of Participants MA, CB, RR, and OM.

81.     The express terms of the Contract obligate Kismet, in its individual capacity or in its capacity as agent for Garden State, and Garden State to reimburse the Fund for the value of the four Participants' claims.

82.     Despite this obligation, and the Fund's satisfaction of all contractual obligations preceding filing suit, Kismet in its individual capacity, or in its capacity as agent for Garden State, and Garden State, refuse to honor their obligations under the Contract.

83.     Kismet's and Garden State's actions and/or inactions constitute a breach of Contract of the Policy Section II, Benefits; Section III, Limitations; and Section IV, Reimbursement Provisions.

84.     As a consequence of the Defendant's breach of Contract, Defendants are jointly and severally liable to the Fund for compensatory, consequential, and incidental damages suffered in an amount to be established at trial but not less than the combined amount of the four Participants' (MA, CB, RR, and OM) claims.

**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court:

a.      Enter judgment against Defendants, jointly and severally, for the amount of the Claims with post-judgment interest;

b.      Enter judgment against Defendants for actual damages in an amount to be determined at trial, with post-judgment interest;

c.      Award reasonable attorneys' fees, interest, and costs incurred in connection with this litigation and;

d.      Award such other relief as the Court deems just and proper.

## COUNT III

### Bad Faith Pursuant to 42 Pa. C.S.A. § 8371

85.     Plaintiffs hereby incorporate the allegations contained in paragraphs 1 through 84 of this Complaint as if set forth in full.

86.     42 Pa. C.S.A. § 8371 provides

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

87.     Defendants have acted in bad faith towards the Fund by their frivolous and unfounded denial of portions of the Fund's claims as set forth herein for the four participants and beneficiaries referred to as "MA," "CB," "RR," and "OM."

88.     Defendants lacked a reasonable basis for refusing to pay benefits, and knew of its lack of reasonable basis, where: they drafted the Policy and incorporated the terms of the underlying plan document in to the terms of the Policy; they specifically approved Highmark as the entity the Fund retained to administer the claims of participants and made it a condition of the Policy; Highmark processed and paid the underling claims of the four participants pursuant to the terms of the incorporated plan document; and Highmark provided to Defendants extensive data related to the underlying claim determinations.

89.     Defendants' conduct violates 42 Pa. C.S.A. § 8731.

90.     Plaintiffs have suffered damages in the form of benefits not paid, plus interest thereon, as a direct and proximate cause of Defendants' bad faith conduct.

**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court:

a.      Enter judgment against Defendants, jointly and severally, for the amount of the Claims with post-judgment interest;

b.      Enter judgment against Defendants for actual damages and punitive damages in an amount to be determined at trial, with post-judgment interest;

c.      Award reasonable attorneys' fees, interest, and costs incurred in connection with this litigation; and

d.      Award such other relief as the Court deems just and proper.

Respectfully submitted,

FEINSTEIN DOYLE PAYNE & KRAVEC, LLC

s/ Joel R. Hurt
Joel R. Hurt (PA ID No. 85841)
Ruairi McDonnell (PA ID No. 316998)
429 Fourth Avenue
Law & Finance Building, Suite 1300
Pittsburgh, PA  15219
Telephone: (412) 281-8400
Facsimile: (412) 281-1007
Email: jhurt@fdpklaw.com

ROBEIN, URANN,
SPENCER, PICARD & CANGEMI, A.P.L.C.

Louis L. Robein (LA Bar No. 11307) (*Motion for Pro Hac Vice admission forthcoming*)
Paula M. Bruner (LA Bar No. 30417) (*Motion for Pro Hac Vice admission forthcoming*)
2540 Severn Avenue, Suite 400
Metairie, Louisiana 70002
Telephone: (504) 885-9994
Facsimile: (504) 885-9969
Email: lrobein@ruspclaw.com
       pbruner@ruspclaw.com

**COUNSEL FOR PLAINTIFFS**