**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SOUTHERN PAINTERS | ) | |
| WELFARE FUND and TRUSTEES | ) | |
| OF THE SOUTHERN PAINTERS | ) | |
| WELFARE FUND, DARRYL TRAYLOR | ) | |
| and WALTER J. ILCZYSZYN | ) | CIVIL ACTION NO. 2:22-cv-1563 |
| | ) | |
| vs. | ) | |
| | ) | |
| GARDEN STATE LIFE INSURANCE | ) | |
| COMPANY and KISMET RISK | ) | |
| MANAGEMENT ASSOCIATES, LLC | ) | |

**BRIEF IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS PLAINTIFFS' COMPLAINT**

Plaintiffs, Southern Painters Welfare Fund and the Trustees (collectively, the "Fund") through undersigned counsel, file this Brief in Support of the Fund's Opposition to Defendants' Motion to Dismiss Plaintiffs' Complaint. (Doc. 23). The Court should deny the Motion to Dismiss for the following reasons:

## I.      INTRODUCTION

The Fund has filed a Complaint against its stop loss insurer Garden State Life Insurance ("Garden State") and its managing general underwriter Kismet Risk Management Associates ("Kismet") for failing to reimburse the Fund, in full, under the excess or stop loss insurance contract.[1] The Complaint advances in Count 1 a claim under the Employee Retirement Income Security Act of 1974, as amended, ("ERISA") for this breach of fiduciary duty. The Complaint also raises, in Counts 2 and 3, State law causes of action for breach of contract and bad faith under

_____

[1] This Contract entitled the "Treaty of Excess Loss Reinsurance" is attached in its entirety to the Complaint as Exhibit B (Doc. 1-3).

42 Pa. C.S. §8371. (Doc. 1, ¶ 59-84).[2] In its Motion to Dismiss, Defendants prematurely argue that there is no fiduciary relationship between the Fund, its stop loss insurer, and the insurer's underwriter. Because they argue lack of fiduciary relationship, Defendants contend that they did not breach any duty by improperly denying reimbursements mandated by the stop loss policy and the ERISA-governed plan of benefits administered by the Fund and its Trustees. However, this factual and legal determination as to whether or not Garden State and Kismet are fiduciaries is not ripe for dismissal without a complete evidentiary record. The Court should deny the Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) because the sufficiency of the allegations is at issue, not the sufficiency of the evidence. The Fund raised sufficient factual allegations for a plausible claim for breach of fiduciary duty, and alternatively, under State law for breach of contract against non-fiduciaries.

## II.     SUMMARY OF FACTS

The Fund is a multiemployer employee benefit plan within the meaning of ERISA, which provides health benefits to employees who are members of a local union affiliated the International Association of Painters and Allied Trades. The Fund is generally "self-insured" and pays benefits out of contributions it receives from participating employers. (¶1, 19). However, the Fund also purchased a stop-loss insurance policy (the "Contract") from Defendants in order to protect itself against the risk that large individual health claims by employees may cause cash flow problems for the Fund and contributing employers which could impact the Fund's ability to provide benefits. (¶20). The Fund is the Named Insured under the Contract, which is a "plan asset" within the meaning of ERISA. The Contract names Kismet as Garden State's "Administrative Office." (Doc.

---

[2] References to the Complaint in this brief are designated only by paragraph number(s) "¶".

1-3, p. 1). By amendment to the Contract, Kismet was responsible for expediting claim review and reimbursing claims. (¶23; Doc. 1-3, p. 1, 17).

Defendants are fiduciaries within the meaning of ERISA because they maintain control over this ERISA plan asset (the Contract), and because they assumed and exercised discretion with respect to the Plan terms. (¶61). Specifically, Defendants reviewed and approved the Plan terms—including the terms on what benefits are payable under the Plan and when they are to be paid—and specifically incorporated the Plan into Contract. (¶26; Doc. 1-3, Sec. 2, M, p. 10). Defendants also specifically vetted and approved Highmark of Blue Cross Blue Shield ("Highmark") as the Claims Administrator for the Fund, and made it a term of the Contract that the Fund continue to retain the services of Highmark while the Contract is in force. (¶27-29).

This lawsuit concerns the claims of four employees who submitted large claims to the Fund, which Highmark then reviewed and approved pursuant to the terms of the Plan. (¶27). Once the claims reached the threshold to activate the stop-loss coverage, the Fund submitted the claims to Defendants with extensive documentation—more than 300 rows of data for each and every claim, including detailed information about the participant, the provider, date of service, place of service, CPT procedure codes, diagnosis codes, plan details (e.g., deductible, copay, coinsurance), benefits paid, and much more. (¶41). In other words, the Fund submitted to Defendants the exact information Highmark utilizes and relies upon every day to make benefit determinations on behalf of the ERISA plans for which it provides claims administration.

Defendants breached their fiduciary duties here by unreasonably exercising their control over the Contract to advance their own financial interests at the expense of the Fund and its participants. Notwithstanding the extensive data the Fund submitted in support of the claims, Defendants have refused to pay the benefits due under the Contract, and have instead unreasonably

demanded even more information to support the claims—specifically, itemized billing from the providers themselves. (¶43-44).

First and foremost, while the Fund has requested this information and provided it to Defendants when it has been able to obtain it, the information is not necessary because the Fund has already submitted more than sufficient information to establish proof of loss under the Contract. (¶43-46). Defendants are simply using the request to frustrate the Fund's efforts and to avoid having to pay benefits. But even if the request was not entirely pretextual, the only possible justification for Defendants seeking this information would be to supplant Highmark's position as Claims Administrator in order to reprocess each claim anew and make its own determination whether the services provided qualified for benefits under the Plan. The Contract and Plan, however, expressly reserve that role for Highmark as the Claims Administrator, and Defendants' attempts to usurp Highmark's role plainly run afoul of their fiduciary duties under ERISA.

## III.   **STANDARD OF REVIEW**

When considering a motion to dismiss pursuant to Rule 12(b)(6), the courts accept the well-pleaded factual allegations in the Complaint. The U.S. Supreme Court has instructed that motions under Fed. R. Civ. P. 12(b)(6) should be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, the court finds that the plaintiff failed to set forth fair notice of the claim(s) and the ground(s) for which it rests.[3] In *Ashcroft v. Iqbal*, the Court clarified this rule in finding that a complaint will survive a motion to dismiss if it contains sufficient factual allegations to "state a claim to relief that is plausible on

---

[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007)(citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

its face."[4] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[5]

Whether the Plaintiffs have adequately pled a claim for relief should not focus on the evidentiary issue of whether the Plaintiffs will likely be able to prove the claim during litigation.[6] Following the *Twombly* decision, the Third Circuit has recognized that the plaintiff is only required to put forth allegations in the complaint that allege "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" for a prima facie case.[7] Ultimately, in these motions the Court determines whether the plaintiff is entitled to offer evidence in support of its allegations, and not whether the plaintiff will prevail at trial.[8]  As reinforced by the Court in *Twombly*: "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."[9] Under this pleading standard, Plaintiffs' Complaint contains sufficient factual support to establish plausible claims for relief against Defendants.

---

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

[5] *Id.*

[6] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) ("Even post-*Twombly*, it has been noted that a plaintiff is not required to establish the elements of a *prima facie* case but instead, need only put forth allegations that "raise a reasonable expectation that discovery will reveal evidence of the necessary element.") (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)).

[7] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (citing *Twombly,* at 556); *Graff v. Subbiah Cardiology Assocs., Ltd.*, No. CIV. 08-207, 2008 WL 2312671, at *4 (W.D. Pa. June 4, 2008).

[8] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).

[9] *Twombly* at 556 (internal citations omitted).

### IV.   ARGUMENT

#### A.  The Complaint Establishes a Cause of Action under ERISA.

In its Motion to Dismiss, the Defendants argue that the Fund cannot assert a cause of action under ERISA since it denies any fiduciary function or role under the Contract. However, the Complaint more than adequately alleges factual bases that both Garden State and Kismet are fiduciaries and functioned as fiduciaries. In fact, the Contract supports a determination that Garden State and Kismet are fiduciaries since construing the terms of the Contract would require an interpretation of the Fund's Plan of benefits and the ultimate control over a plan asset. According to the Contract, Garden State reserved the right to interpret terms and set conditions of the Plan as it applies to the Contract. (Doc. 1-3, pp. 9-10, 12, 14-15) (discussed *infra*). Notwithstanding the contractual authority, the Fund has complied with the Contract, whereas the Defendants have not. As alleged, the breach is twofold: 1) denying previously adjudicated claims without proper cause or justification, and 2) misinterpreting provisions of the Contract to evade financial responsibility. (¶71-72).

In the alternative, the Defendants aver that if they are fiduciaries in administering the proof of loss requirement under the Contract, then the Fund has failed to allege that they acted arbitrarily. However, even a cursory review of the Complaint clearly shows otherwise.[10] (¶34-36; ¶44,46).

---

[10] The Complaint has sufficiently alleged a breach. The following paragraphs specifically allege the arbitrary nature of Defendants' action or inaction:

¶34  …In January 2022, Kismet unilaterally and arbitrarily determined that $396,115.27 of the paid charges were then and continue to be "denied." The Fund is due an additional $396,115.27 in reimbursements related to Fund Participant "MA."

¶35  …An additional $370,621.06 is due the Fund relative to drug and infusion charges incurred by Participant CB and duly adjudicated and approved by Highmark, as well as the following other charges denied by Kismet for reasons not supported by the Contract or the Plan.

The Fund can adequately demonstrate that the claims were arbitrarily denied and that these denials lack support from either the Contract or the Plan.

Despite the provided data being "beyond adequate in proving the loss," Kismet "inexplicably and arbitrarily" deviated from the normal procedure by also requiring "itemized billing." (¶43-44). Garden State and Kismet denied reimbursement, applying their own itemized billing framework, which is unsupported in the Contract and inconsistent with the Fund's Plan. The term "proof of loss" is not specifically defined in the Contract. The data previously submitted verifies payment and adequately proves the loss. (¶43; 46). Contrary to the Defendants' argument, the Fund and Highmark did not refuse to obtain this particular type of data. The Fund, Highmark, the Plan's consultant, and Fund counsel all requested but could not obtain this data from the providers, despite repeated efforts and demands. (¶44-45). The Complaint more than adequately alleges factual bases that both Garden State and Kismet are fiduciaries and functioned as fiduciaries to the Fund in multiple fashions.

Under ERISA Section 3(21), an entity is a fiduciary with respect to a plan when it "exercises any discretionary authority or discretionary control respecting management of such *plan* or *exercises any authority or control respecting management or disposition of* its *assets*…[or] has

---

¶36  …Such amount was wrongfully deemed "denied" by Kismet as having not been supported by certain information requested from Highmark.

¶44    Kismet, however, inexplicably and arbitrarily maintains that the Fund and Highmark are responsible for obtaining from various providers who treated or supplied medicines to, or otherwise provided medical care and services to the four Participants, "itemized billing" data and information and delivery of same to Kismet.

¶46    Defendants can show no cause or rationalization for denying full payment on the proven losses.

any discretionary authority or discretionary responsibility in the administration of such plan."[11] (Emphasis added). As explained by the Supreme Court in *Pegram v. Herdrich*, whether an entity is acting as a fiduciary depends on "some background of fact and law."[12] ERISA defines "fiduciary" in functional terms of control and authority. For example, ERISA defines an administrator "as a fiduciary only to the extent that he *acts in such a capacity in relation to a plan*."[13] (Emphasis added).  The Third Circuit applied this functional test in *Nat'l Sec. Sys., Inc. v. Iola*, recognizing that the threshold question concerning a fiduciary's obligation under ERISA is "whether some person or entity was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint."[14]

The Third Circuit in *Curcio v. John Hancock Mut. Life Ins. Co.*, recognized that the definition of fiduciary under ERISA is "broadly defined."[15] The facts showed the defendant hospital was a fiduciary when it decided to replace a Blue Cross policy with a self-funded one.[16] Indeed, the courts have acknowledged insurance providers to be fiduciaries "where insurers play central roles in determining what benefits the plans will provide or where a plan de facto delegates its administration to an insurance agent or broker, courts have found those agents or brokers to be

---

[11] *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 97 (3d Cir. 2012) (quoting Section 3(21) of ERISA, 29 U.S.C.A. § 1002(21) (West)).

[12] *Pegram v. Herdrich*, 530 U.S. 211, 211, 120 S. Ct. 2143, 2145, 147 L. Ed. 2d 164 (2000).

[13] *Id.* at 225–26.

[14] *Iola* at 97 (citing *Pegram,* 530 U.S. at 226).

[15] *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 233 (3d Cir. 1994).

[16] *Id.*

plan fiduciaries."[17] Similarly, in *Feigenbaum v. Summit Health Adm'rs, Inc.*, the factual allegations precluded summary judgment because the plan heavily relied on its insurance broker for advice and administration over stop loss selection. At issue was the role of the insurance broker when that plan suffered a gap in stop loss coverage. The inquiry was "to locate where on the spectrum between mere provision of insurance and *de facto* total control of plan decisions and assets the alleged fiduciary's actions lie."[18] In *Reich v. Lancaster*, the Fifth Circuit affirmed the Department of Labor's position that an insurance agent could be an "ERISA fiduciary" where the agent "usurped the trustees" discretion and control over administration by misleading the trustees.[19]

The Complaint contains extensive allegations that show that each of the Defendants assumed actual fiduciary status by the terms of the Contract and by *de facto* practice. Specifically, the Fund alleges that Garden State and Kismet are "fiduciaries as a result of their exercise of authority and control respecting the management and disposition of this plan asset (i.e., the Contract)." (¶¶16, 61). Garden State and Kismet "held themselves out as trusted partners and assumed discretionary authority or control for interpreting plan provisions, terms and conditions. Because the Defendants exercised disposition and administration over a Fund asset, Defendants assumed the role of fiduciary under common law and under ERISA." (¶¶64-65).

---

[17] *Feigenbaum v. Summit Health Adm'rs, Inc.*, No. 01-CV-805 (WJM), 2008 WL 2386168, at *4 (D.N.J. June 9, 2008) (citing *Reich v. Lancaster*, 55 F.3d 1034, 1044 (5th Cir. 1995), which confirmed the Department of Labor's determination that an insurance agent was an "ERISA fiduciary" who exercised "sufficient discretionary authority and control" over a self-funded ERISA plan and this agent usurped the trustees' discretion and control over management and administration by presenting misleading information to the governing trustees).

[18] *Id.* at *4.

[19] *Reich v. Lancaster*, 55 F.3d 1034 (5th Cir. 1995).

More to the point, the Contract itself defines the control and authority ceded to Defendants in relation to the Fund's Plan of benefits and the Plan asset.[20] Subject to the exclusions established by the Contract (none of which apply here), reimbursement of claims is expressly restricted to the Plan's eligibility requirements for covered participants and benefits as follows:

> E. COVERED BENEFITS, For the purposes of reimbursement under this Treaty, are limited to the expenses incurred by a Covered Person that are:
>
>> i.   covered under the terms of Your Plan, taking into account all of the exclusions and limitations in Your Plan; and …
>>
>> v.   not otherwise limited or excluded by this Treaty.
>
> F. COVERED PERSON
>
>> (a) Means an employee or an employee's dependent who meets the eligibility requirements as set forth under Your Plan.
>
> G. ELIGIBLE EXPENSE means the charge that is covered and payable under Your Plan.

(Doc. 1-3, Pages 9).

Any changes or amendments to the Plan require the Insurer's consent. Specifically, under the heading, "B. Employee Benefit Plan," the contract mandates that "… Your Plan cannot be changed in any way while this Treaty is enforced without the advance written consent of the Reinsurer." (Doc. 1-3, Page 12). The Contract also mandates that Garden State controls the selection and retention of the Fund's Claim Administrator. According to "E. Claims Administration," the Contract requires that "the services of the Claims Administrator [Highmark] cannot be terminated without the advanced written consent of the Reinsurer. Such consent shall

---

[20] *Pension Benefit Guar. Corp. v. White Consol. Industries, Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993); *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007) (finding at the motion to dismiss stage, the Court may rely on the complaint, attached exhibits, and matters of public record).

only be granted in the event that the Claims Administrator is to be replaced by another acceptable to the Reinsurer." (Doc. 1-3, Page 15). The Contract requires the Fund to notify Garden State promptly of any change to its geographical area, business, or to a 20% increase or decrease in the number of its participants. (Doc. 1-3, Page 14-15 G). The Contract also contains an amendment entitled, "Specific Insurance Immediate Reimbursement Amendment" that unilaterally placed Kismet in charge of reviewing claims and issuing reimbursement. (Doc. 1-3, p. 17).

Notwithstanding the fiduciary control assumed by Garden State, and through its agent Kismet, the breach alleged did not simply arise from the performance of ministerial tasks as the Defendants argue. Rather, by denying proof of loss based on wholly different criteria than that required in the Fund's Plan of benefits, Defendants supplanted the judgment of the Trustees with their own independent judgment, a demonstration of considerable discretion and control over the Plan. Accordingly, the Complaint alleged the unauthorized acts of Garden State and Kismet:

¶70    By denying the Fund's claims for full reimbursement under the Contract for the four Participant claims, Defendants have usurped the Fund Trustees' fiduciary decision that each Participant was eligible for benefits and Highmark's adjudication of each claim.

¶72    Defendants also breached their fiduciary duty by misinterpreting not only the provisions of Fund documents and the operations of the Fund, but also the provisions of the Contract in an attempt to evade responsibility for paying the four Participant claims in full.

A fiduciary under ERISA Section 404 must "discharge his duties with respect to the plan solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of … providing benefits to participants and beneficiaries … and defraying reasonable expenses of the plan." (29 U.S.C. § 1104(a)(1)(A)). Along with this duty of loyalty, ERISA imposes a duty of prudence (29 U.S.C. § 1104(a)(1)(B)) and a duty to follow plan documents (29 U.S.C. § 1104(a)(1)(D)).  Defendants have breached each of these duties by advancing their own interests

at the expense of the Plan and its participants, and by disregarding and supplanting Highmark's role as Claims Administrator and misinterpreting the Plan provisions. (¶73). In addition, Defendants may be found liable under ERISA Section 405, by knowingly participating in a breach by their co-fiduciary, or by having knowledge of a breach by their co-fiduciary and failing to make reasonable efforts to remedy a breach.  (¶76-77) (citing 29 U.S.C. § 1105).

None of the cases cited by Defendants in support of its motion are applicable to the facts of this case.[21] For example, *Santomenno v. John Hancock Life Ins. Co.* stands for the proposition that a plan related action is not discretionary when that action arises out of a "negotiated contract between the third party and the plan." (Doc. 23, p. 6). In *Santomenno*, participants (not the plan trustees) of a 401(k) plan filed suit against the provider (Hancock) alleging a breach of fiduciary duty for the excessive fees it set. On review, the Third Circuit found that this particular action by Hancock, i.e., the implementation of a fee structure, was negotiated and approved by the trustees of that plan.[22] In that context, the participants could not prove that Hancock owed a fiduciary duty

---

[21] Other circuit decisions cited by Defendant show instances of contractual authority when the Trustees have the final say in negotiation. *See e.g., Doe 1 v. Express Scripts, Inc.*, 837 F. App'x 44 (2d Cir. 2020) (finding the challenge raised by participants arises from negotiated "business dealings [that] were not directly associated with the benefits plan at issue but were generally applicable to a broad range of health-care consumers," and citing *DeLuca v. Blue Cross Blue Shield of Mich.*, 628 F.3d 743, 747 (6th Cir. 2010)); *Kerns v. Benefit Tr. Life Ins. Co.*, 992 F.2d 214 (8th Cir. 1993).

[22] *Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A)*, 768 F.3d 284, 293 (3d Cir. 2014) (citing *Hecker v. Deere & Co.,* 556 F.3d 575, 583 (7th Cir.2009), *supplemented by* 569 F.3d 708 (7th Cir.2009)). "Consequently, a service provider owes no fiduciary duty to a plan with respect to the terms of its service agreement if the plan trustee exercised final authority in deciding whether to accept or reject those terms. The plan participants also alleged that Hancock was a fiduciary because it gave investment advice to the trustees."

to the participants because the plan trustees exercised final authority in deciding whether to accept or reject the fee structure's terms.[23]

Unlike *Santomenno*, Kismet (and Garden State) took *de facto* control of the Plan and applied their own standards and conditions as to what constituted adequate proof of loss under the Fund's Plan of benefits. These requirements and conditions imposed by the Defendants were not negotiated or approved by the Plan – nor were they consistent with the terms of the Contract or the Fund's Plan of benefits. To survive a motion to dismiss, all that is required by the Fund is to assert a legally cognizable theory and factual allegations to support that theory. The Fund's legal theory is sound, and the Complaint is replete with allegations of conduct that establishes the fiduciary relationship of the Defendants. At most, Defendants' arguments, denying its discretionary conduct, present factual disputes that should not be resolved by this Court on a motion to dismiss.

Further, the Complaint adequately raises actionable claims under ERISA for breach of fiduciary duty and alternatively against a non-fiduciary (¶¶59-75). Defendants also argue, erroneously, that Plaintiffs cannot bring an ERISA Section 502(a)(3) claim against them if they acted in a non-fiduciary capacity, because such a claim would seek legal relief when Section 502(a)(3) allows only for equitable relief. (Doc. 23 at 11). However, numerous courts have held that the remedy of equitable restitution is available in similar circumstances.[24]

---

[23] *Santomenno* at 293.

[24] *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212-213 (2002); *Pell v. E.I. DuPont de Nemours*, 539 F.3d 292 (3d Cir. 2008); *Skretvedt v. E.I. DuPont de Nemours*, 372 F.3d 193, 214 (3d Cir. 2004); *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 777 F.Supp.2d 869, 891-92 (E.D.Pa. 2011); *Kaliszewski v. Sheet Metal Workers' Nat'l Pension Fund*, 2005 WL 2297309, *4 & n. 28 (W.D.Pa. July 19, 2005).

At the pleading stage, it is respectfully submitted that the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."[25] The Fund alleges a cognizable legal theory that Garden State and Kismet assumed a fiduciary role and function with regard to the Plan. The Fund further alleges that Garden State and Kismet breached their duties when they derogated from the Contract and Fund's Plan of benefits.  Accepted as true with all reasonable inferences drawn in Plaintiffs' favor, these allegations are more than sufficient to allege fiduciary status and survive a motion to dismiss—as it would be premature to make specific determinations about Defendants' fiduciary status at this stage of the litigation.[26]

**B.  <u>The Complaint Properly Asserts Alternative State Law Causes of Action.</u>**

In their Motion to Dismiss, the Defendants argue, in the alternative, that even if the ERISA claim survives, the State law claims are preempted under ERISA. Alternatively, Defendants contend that if the State law claims survive, this outcome demonstrates that Kismet is neither a party to the Contract nor an insurer, so that a breach of contract and/or bad faith claims cannot

---

[25] *Wayne Surgical Ctr., LLC v. Concentra Preferred Sys., Inc.*, No. CV 06-928 (HAA), 2008 WL 11510367, at *2 (D.N.J. May 9, 2008) (citing *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) (quoting *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005)); *see also, e.g.*, *Labov v. Lalley*, 809 F.2d 220, 221 (3d Cir. 1987).

[26] *ILWU-PMA Welfare Plan Bd. of Trustees v. Connecticut Gen. Life Ins. Co.*, No. C 15-02965 WHA, 2015 WL 9300519, at *1 (N.D. Cal. Dec. 22, 2015) (finding that it would be premature at the motion to dismiss stage to determine that the defendants lacked discretion when the plaintiff-fund alleged its insurer acted *ultra vires*). *Cf. Chao v. N.J. Licensed Beverage Ass'n, Inc.*, 461 F. Supp. 2d 303, 308 (D.N.J. 2006) (noting that a determination of the precise nature of fiduciary status is an inappropriate inquiry at the motion to dismiss stage).

survive against Kismet. These issues and arguments are premature. The Fund should be allowed to engage in discovery to establish the relationship between the Fund, Garden State, and Kismet.[27]

Contrary to the Defendants' attempt to dismiss state law claims on preemption grounds, the Fund is procedurally allowed to plead claims in the alternative and has done so. Fed. Civ. Proc. R. 8(e) allows a party to state "as many separate claims or defenses as it has, regardless of consistency." Rule 8 also allows claims to be stated alternatively, and the Complaint should not be considered insufficient because of "the insufficiency of one or more of the alternative statements." In *Schirmer v. Principal Life Ins. Co.*, the court found the alternative state law claims should survive the motion to dismiss stage "where there is doubt whether a plan is subject to ERISA, regardless that they will be preempted if ERISA ultimately does apply."[28] Similarly, there is no need for the Court to address whether the ERISA claim is viable or preempts all or part of the state law claims at this stage of the litigation.

By incorporation of the allegations, the Fund has adequately alleged a State law claim for breach of contract, which should not be preempted under ERISA Section 514. Count 1 concerning

---

[27] Without the benefit of discovery, the Fund lacks the ability to sufficiently establish the apparent legal relationship it had with Kismet as well as the relationship Kismet had/has with Garden State. Since discovery may reveal that Kismet is an insurer or agent of Garden State, denial of the Defendants' Motion to Dismiss is appropriate in order to facilitate a fair opportunity to establish this relationship.

[28] *Schirmer v. Principal Life Ins. Co.*, No. 08-CV-2406, 2008 WL 4787568, at *3 (E.D. Pa. Oct. 29, 2008) (citing *Coleman v. Standard Life Ins. Co.*, 288 F. Supp. 2d 1116, 1121 (E.D. Cal. 2003) and reasoning that "[i]f courts routinely granted motions to dismiss under these circumstances, plaintiffs would be forced to hazard a guess as to whether their plan is properly covered by ERISA, and would suffer dismissal of their complaint if the guess turned out to be incorrect"). *See also, ILWU-PMA Welfare Plan Bd. of Trustees v. Connecticut Gen. Life Ins. Co.*, No. C 15-02965 WHA, 2015 WL 9300519, at *8 (N.D. Cal. Dec. 22, 2015).

a breach of the fiduciary duty against Defendants includes an alternative remedy in equity if the Defendants are determined not to be fiduciaries. (¶75).

As a preliminary matter, Defendants' Motion to Dismiss conflates the separate concepts of "complete preemption" under ERISA Section 502(a), 29 U.S.C. §1132(a) and "conflict preemption" under ERISA Section 514, 29 U.S.C. §1144(a). The doctrine of complete preemption under ERISA holds that state law claims are completely preempted and may be removed to federal court if (1) the plaintiff, at some point in time, could have brought the claim under ERISA Section 502(a); and (2) there is no other independent legal duty that is implicated by the defendant's actions.[29] Complete preemption under §502(a) is jurisdictional, rather than a preemption doctrine, because the federal law entirely replaces any state law.[30] If the Court ultimately concludes that both Defendants are fiduciaries, then under complete preemption, ERISA preempts the alternative State law claims raised by the Plaintiffs. This determination must not be resolved at the pleading stage since it requires discovery as to the level of discretionary control of a Plan asset taken by the Defendants.

However, if this Court concludes that both Defendants are not fiduciaries, then ERISA does not automatically preempt the asserted State law claims; instead, the doctrine of conflict preemption applies. ERISA Section 514, 29 U.S.C. §1144 preempts only State law claims that *relate to* an employee benefit plan. The phrase "relate to" is so vague that it effectively provides

---

[29] *Aetna Health Inc. v. Davila*, 542 U.S. 200, 201, 124 S. Ct. 2488, 2491, 159 L. Ed. 2d 312 (2004).

[30] *Id.* at 201.

no standard at all. In interpreting this language, the Supreme Court rejects the literal meaning of "relate to" because "really, universally, relationships stop nowhere."[31]

The Third Circuit has reached the same conclusion, "[r]ecognizing that [i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course."[32] Recently, in a case of first impression, *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co*, the Third Circuit held that an out-of-network provider can pursue some common law remedies (i.e., breach of contract and promissory estoppel claims) against an insurer (Aetna) that reneged on its promise to pay claims in full.[33] The court determined that these State law claims could be interpreted as seeking to enforce obligations separate from the ERISA plan. It reasoned that Aetna's obligation or *promise to pay* did not arise from an interpretation of the plan, rather it was a separate obligation, thus, the State law claims were not preempted.[34]

Other circuits have found that ERISA Section 514 does not preempt claims brought by ERISA plans and their trustees against commercial entities that contract with a plan, such as third

---

[31] *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655, 115 S. Ct. 1671, 1677, 131 L. Ed. 2d 695 (1995); *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 813-814 (1997).

[32] *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 226 (3d Cir. 2020).

[33] *Aetna Life Ins. Co*. at 226. However, also see *Barber v. Unum Life Ins. Co. of Am.*, 383 F.3d 134, 141 (3d Cir. 2004) (finding that a bad faith claim (42 Pa. C.S. §8371) would be preempted under Section 514 because the "punitive damage remedy supplements ERISA's exclusive remedial scheme"). Plaintiffs acknowledge that if the Court determines that the Fund maintains ERISA claims against Garden State and Kismet, that the alternative claim in bad faith is likely preempted.

[34] *Id*. at 237. The Surgery Center also included a claim for unjust enrichment, which the court found was pre preempted under ERISA. The Third Circuit reasoned that the "enrichment" on Aetna was to discharge an obligation it owed to the insured. The "benefit conferred" is indeed premised on the existence of the plan." Since that obligation arose out of the ERISA plan of benefits, the unjust enrichment was precluded by ERISA. (*Id*. at 240).

17

party administrators.[35] The Ninth Circuit in *Geweke Ford v. St. Joseph's Omni Preferred Care* held that ERISA did not preempt a state law breach of contract claim against an excess loss insurer that processed benefits for an ERISA-governed welfare plan. The plan alleged that the insurer failed to process benefit claims covered under the plan and reimburse the plan for benefits. On review, the court held the claims were not preempted because the State law claims did not result in the direct regulation of an ERISA plan or "force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers."[36]

### C.  The Complaint Sufficiently Shows that Kismet is Party to the Contract.

In its Motion to Dismiss, the Defendants argue that Kismet is not a party of the Contract to be liable for an alleged breach of contract. However, the Contract supports that Kismet is a party by acting as Garden State's agent and being incorporated in the Contract by reference. Common law principals of contract and agency for binding "non-signatories" is demonstrated by (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel.[37] As alleged in the Complaint, Kismet is named as acting on its own behalf and as "agent" for Garden State. (¶23, 81, 82). The Contract incorporates Kismet by reference and names Kismet as an authorized agent for Garden State.

---

[35] *Gen. Am. Life Ins. Co. v. Castonguay*, 984 F.2d 1518, 1522 (9th Cir. 1993). See e.g. *Trustees of AFTRA Health Fund v. Biondi*, 303 F.3d 765, 769 (7th Cir. 2002) (finding state law claims against third-party service providers are not preempted because ERISA does not provide a remedy for fiduciaries to recover money paid). *Coyne & Delany Co. v. Selman*, 98 F.3d 1457 (4th Cir. 1996) (concluding that malpractice claims against plan's insurance consultants were not preempted). *Union Health Care, Inc. v. John Alden Life Ins. Co.*, 908 F. Supp. 429 (S.D. Miss. 1995).

[36] *Geweke Ford v. St. Joseph's Omni Preferred Care Inc.*, 130 F.3d 1355, 1359 (9th Cir. 1997) (citing *Travelers,* 514 U.S. at 668, 115 S.Ct. at 1682).

[37] *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 446 (3d Cir. 1999) (addressing under agency that non-signatories of a contract may be bound).

According to the terms of the Contract, entitled "Notice and Proof of Loss,"

…Notice given by on behalf of a Covered Person or beneficiary to the Reinsurer (at its home office as indicated [as Administrative Office: Kismet] on the face page) or to *any authorized agent* of the Reinsurer, with enough information to identify the Covered Person, will be deemed notice to the Reinsurer. (Emphasis added).

(Doc. 1-3, p. 16).

This provision further states: "Written proof of loss *must be given to the Reinsurer* within 90 days of such loss…" (Emphasis added). By amended language, Kismet is named as the Reinsurer. Kismet offers its services, which are automatically implemented with procedures and conditions. This amendment that adds Kismet to the Contract "replaces and supercedes all previous procedures. The Specific Insurance Immediate Reimbursement is a privilege offered by Kismet …and Insurer and may be revoked at any time without prior notice …This Amendment is part of the Treaty and should be attached to it." (Doc. 1-3 p. 17). Kismet was, without question, an integral party in the administration of the Contract and the controlling Plan. Sufficient facts are pled that give rise to a State law claim for breach of contract against Kismet and as an insurer who engaged in bad faith where Kismet acted as an agent to Garden State.

## V.   <u>CONCLUSION</u>

The Complaint meets, and in fact, exceeds the minimum standards required by Federal Rules of Civil Procedure, Rule 8. The allegations also meet the notice and facial plausibility requirements of *Bell Atl. Corp. v. Twombly* and *Ashcroft v. Iqbal*. Accordingly, the Court should deny the Defendants' Motion to Dismiss. In the alternative, should the Court find deficiencies in the Complaint that would support dismissal, the Fund respectfully requests leave to amend to correct any deficiencies in the Complaint, rather than dismiss any count with prejudice.

Respectfully submitted,

s/ Paula M. Bruner
_____
Louis L. Robein (LA Bar No. 11307) *
Paula M. Bruner (LA Bar No. 30417) *
ROBEIN, URANN,
SPENCER, PICARD & CANGEMI, APLC
2540 Severn Avenue, Suite 400
Metairie, LA  70002
Telephone: (504) 885-9994/Fax: (504) 885-9969
Email: lrobein@ruspclaw.com
          pbruner@ruspclaw.com


s/Joel R. Hurt
_____
Joel R. Hurt (PA ID No. 85841)
Ruairi McDonnell (PA ID No. 316998)
FEINSTEIN DOYLE PAYNE & KRAVEC, LLC
429 Fourth Avenue
Law & Finance Building, Suite 1300
Pittsburgh, PA  15219
Telephone: (412) 281-8400/Fax: (412) 281-1007
Email: jhurt@fdpklaw.com

* admitted *pro hac vice*
COUNSEL FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2023, I electronically filed the foregoing Brief in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss Plaintiffs' Complaint using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Kathleen A. Gallagher (PA #37950)
Russell D. Giancola (PA #200058)
GALLAGHER GIANCOLA LLC
3100 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219 412.717.1900
kag@glawfirm.com  rdg@glawfirm.com

Victoria S. Rutherford (TX #24110309)
GREER, HERZ & ADAMS, L.L.P.
One Moody Plaza, 18th Floor
Galveston, TX 77550
vrutherford@greerherz.com

/s/Paula M. Bruner
Paula M. Bruner (LA Bar No. 30417)